UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL PETRUCCI                                     CIVIL ACTION

VERSUS                                              NO: 19-12020

SALVADORE CHRISTINA, ET AL.                         SECTION: "A" (5)

## ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 121)** filed by defendants Bradley Egenberg and Egenberg, APLC ("the Egenberg defendants" or at times collectively and singularly "Egenberg"). Plaintiff, Michael Petrucci, who is unrepresented, opposes the motion. (Rec. Doc. 126). The motion, submitted for consideration on December 1, 2022, upon receipt of the plaintiff's opposition, is before the Court on the briefs without oral argument.[1]

This civil action involves legal malpractice claims against two sets of attorneys: 1) the Becnel defendants, whom Petrucci hired in November 2011 to prosecute his economic injury claims arising out of the Deepwater Horizon Oil Spill, and 2) the Egenberg defendants, whom Petrucci hired in May 2018 to pursue legal malpractice claims against

---

[1] The Egenberg defendants filed their motion for summary judgment on April 11, 2022, and it was over their objection that the motion was ultimately submitted for consideration nearly eight months later in December 2022. The Court held the motion for summary judgment in abeyance and even administratively closed this case at one point in order to allow Mr. Petrucci the opportunity to obtain counsel to help him oppose the motion. Of course, having representation does not ensure a successful opposition. Earlier in this case the Becnel defendants' motion for summary judgment was granted even though Mr. Petrucci's former attorneys had submitted a thorough and well-argued opposition on his behalf.

The Court is persuaded that Mr. Petrucci has diligently sought new representation. But the Court could not delay submission of Egenberg's motion for summary judgment any longer. The Court is also persuaded that given the facts in this case, which the Court has taken directly from the plaintiff's pleading, the outcome of the Egenberg defendants' motion for summary judgment would likely be no different if Mr. Petrucci had been able to retain new counsel.

the Becnel defendants for their alleged failure to properly handle his Deepwater Horizon claims.

Having considered the pleadings, the evidence of record, the applicable law, and the parties' contentions, the Court determines, for the reasons that follow, that all of Petrucci's legal malpractice claims against his former attorneys with the Becnel Law Firm were perempted by the time that Petrucci retained the Egenberg defendants. Therefore, the Egenberg defendants' are entitled to judgment as a matter of law and their motion for summary judgment is granted.

## I.    Background

### *Procedural History*

The plaintiff, Michael Petrucci, initiated this action pro se against Salvadore Christina, Kevin Klibert, Daniel Becnel, Jr., Daniel Becnel, III, and the Becnel Law Firm (the Becnel defendants) alleging that his economic injury claims arising out of the Deepwater Horizon Oil Spill were denied due to legal malpractice committed by the firm's attorneys, and in particular attorney Salvadore Christina. Petrucci later filed an amended complaint adding attorney Bradley Egenberg and Egenberg, APLC alleging that Egenberg caused Petrucci's legal malpractice claims against the attorneys with the Becnel firm to become time-barred. Petrucci had hired Egenberg to pursue legal malpractice claims against the Becnel defendants after terminating their services. Petrucci contends that Egenberg misunderstood the manner in which prescription/peremption works under Louisiana law, and therefore allowed at least some if not all of his legal malpractice claims against the Becnel defendants to become time-barred.

Petrucci later retained counsel to represent him in this lawsuit and through counsel he was granted leave to file a Second Amended Complaint ("SAC") (Rec. Doc. 41), which is now the governing pleading. The SAC is eighty pages long and comprises 310 paragraphs

that describe in painstaking detail how the defendant attorneys, especially the Becnel attorneys, allegedly damaged Petrucci through numerous acts of alleged legal malpractice that spanned several years. As noted above, this civil action involves legal malpractice claims against two sets of attorneys: 1) the Becnel defendants, whom Petrucci hired in November 2011 to prosecute his economic injury claims arising out of the Deepwater Horizon Oil Spill, and 2) the Egenberg defendants, whom Petrucci hired in May 2018 to pursue legal malpractice claims against the Becnel defendants for their alleged failure to properly handle his Deepwater Horizon claims. On October 28, 2021, the Court granted a motion to withdraw filed by Mr. Petrucci's attorneys. (Rec. Doc. 109, Minute Entry). Petrucci has been unrepresented since that time.

Prior to the motion to withdraw being granted, the Becnel defendants moved for summary judgment arguing that Petrucci's legal malpractice claims against them were time-barred, and that they became time-barred before Petrucci filed this lawsuit on August 5, 2019. Petrucci's former attorneys filed an opposition on his behalf before they were allowed to withdraw from the case. On November 29, 2021, the Court entered its Order and Reasons granting the Becnel defendants' motion for summary judgment. (Rec. Doc. 111, Order and Reasons). The Court explained in the Order and Reasons why Petrucci's legal malpractice claims against the Becnel defendants were in fact time-barred by the time that this lawsuit was filed. The Court stressed, however, that nothing in the Order and Reasons should be construed as suggesting that Egenberg had any fault in the claims against the Becnel defendants being time-barred. (*Id.* at 8 n.4). That determination would be for another day. A final judgment has been entered as to the Becnel defendants. (Rec. Doc. 115, Judgment).

Regarding Egenberg, Petrucci's legal malpractice claim is that Egenberg failed to timely file a malpractice claim against the Becnel defendants and failed to properly advise

on the limitations period in which to file such a claim—in other words, that Egenberg allowed the legal malpractice case against the Becnel defendants to become time-barred during his time as Petrucci's attorney. This theory only has merit if Petrucci still had a viable (not time-barred) legal malpractice claim against the Becnel defendants on May 3, 2018, which is the date that he hired Egenberg.

### *The Egenberg Representation*

Petrucci was referred to Egenberg by Philip J. Starr, Esq., an attorney who is not licensed in Louisiana, but who became heavily involved in Petrucci's efforts to pursue the Becnel defendants. Petrucci retained Egenberg on May 3, 2018, to pursue legal malpractice claims against the Becnel defendants, whom he had terminated on February 19, 2018. (Rec. Doc. 54-4, Exhibit D; SAC ¶ 187).

Even though Egenberg had been retained, the plan was for Starr to remain involved since he had intimate knowledge of both the substance of Petrucci's Deepwater Horizon claims and what the Becnel defendants had been doing to prosecute those claims. It was even agreed that Starr would draft the pleadings for the legal malpractice claim to be filed against the Becnel defendants. Petrucci alleges that Egenberg twice told Starr that under Louisiana law there was a three-year statute of limitations for legal malpractice claims but that it did not start running until the attorney notified the client that he had committed legal malpractice. (SAC ¶¶ 208, 212). This of course is not correct. Relying on Egenberg's explanation as to when the limitations period would start to run, and given that the Becnel defendants had never notified Petrucci that they had committed malpractice, Starr (and Petrucci) assumed that there was no rush to file a legal malpractice lawsuit against the Becnel defendants. (*Id.*).

Since Starr erroneously believed (based on what Egenberg allegedly told him) that no statute of limitations was running against Petrucci, Starr took his time over the next five

or six months in developing Petrucci's case, reviewing documents and emails, and getting clarification from Petrucci when necessary. (SAC ¶ 210). Starr did not constantly keep Egenberg up to date regarding his findings but he did occasionally update him either orally or in writing. (*Id.* ¶ 211). Starr worked with no sense of urgency because he was relying on what Egenberg had told him about the statute of limitations for legal malpractice—that it had not yet started to run against Petrucci because the Becnel defendants had not yet notified him about any legal malpractice. (*Id.*).

Starr provided Egenberg with a draft of the legal malpractice complaint against the Becnel defendants on March 12, 2019. (SAC ¶ 213). At some point before April 30, 2019, Egenberg told Starr that one-year peremption could present a problem for Petrucci, but that he was not familiar with that provision of the law and would speak to another attorney in his firm about it. (*Id.* ¶ 215). Starr then did some legal research of his own and suggested to Egenberg that per the decision in *Lomont v. Bennett*, discussed below, peremption may not apply because Petrucci's case involved fraud. (*Id.* ¶ 216). Then sometime after May 12, 2019 and/or May 22, 2019, Egenberg told Starr that he may have committed malpractice and that he would get back to Starr about that. (SAC ¶ 217). Egenberg did not get back to Starr. Instead, on May 21, 2019, Egenberg withdrew from the representation. Egenberg's disengagement letter states in significant part:

> Based on our review of the facts of your case, as well as the law pertaining to legal malpractice claims, including but not limited to La. R.S. § 9:5605, it is our opinion that the majority of your claims have been perempted . . . . It is our opinion that any cause of action for alleged acts of malpractice that occurred prior to May 2016 have been perempted. Furthermore, it is our opinion that the most significant of these claims (including Becnel's alleged failure to advise you to opt out of the MDL Settlement) had already been perempted before you engaged our firm to represent you.
>
> However, you may possibly still have some claims available, specifically pertaining to events that took place in August and September of 2016 and January 2017. However, these claims could become perempted as early as

August 2019, so we urge you to act quickly in finding other legal counsel to possibly represent you.

(Rec. Doc.54-5, Exhibit E).

Petrucci's theory has always been that when Egenberg took the case on May 3, 2018, "the actions [against the Becnel defendants] were still alive," but through Egenberg's negligence the claims became time-barred during the course of Egenberg's representation. Specifically, because Egenberg had erroneously believed that the statute of limitations would only begin to run once the Becnel defendants gave their former client notice of any malpractice, and had misinformed Petrucci to that effect (through Starr who was acting on behalf of Petrucci), he took no action on the case, which included allowing the draft complaint to sit on his desk unreviewed for approximately two months (March 12, 2019 to May 12, 2019), until he finally terminated the representation. Petrucci believes that Egenberg terminated the representation because Egenberg knew that he had allowed the claims against the Becnel defendants to peremmpt/prescribe on his watch and his "easy way out" was simply to withdraw. (Rec. Doc. 126, Opposition).

Egenberg's position is that the legal malpractice claims against the Becnel defendants were time-barred well before Petrucci hired him. And therefore even if Petrucci could prove all of his allegations against Egenberg, *i.e.*, that Egenberg erred in interpreting (and explaining to Starr) the applicable limitations period for legal malpractice claims in Louisiana, and afforded no sense of urgency to reviewing the draft complaint, it remains that these acts/omissions did not cause the claims against the Becnel defendants to be time-barred, and therefore cannot serve as a basis for liability against Egenberg. The Egenberg defendants contend that that there is an absence of factual support for the crucial causation element of Petrucci's legal malpractice claims against them, and that there are no genuine issues of material fact standing in the way of summary judgment.

The parties' contentions are addressed below. [2]

## II.    Law and Analysis

### *Governing Law*

Egenberg argues that the underlying legal malpractice claims against the Becnel

defendants were already time-barred by the time that Petrucci retained him on or about May

3, 2018. To establish a claim for legal malpractice under Louisiana law, the plaintiff must

prove: 1) the existence of an attorney-client relationship; 2) negligent representation by the

attorney; and, 3) loss caused by that negligence. *Costello v. Hardy*, 864 So. 2d 129, 138

(La. 2004). The third element of the legal malpractice cause of action constitutes the

required element of causation. If Egenberg's assertion is correct, then nothing that

Egenberg said (even if erroneous) or did or failed to do caused a loss to Petrucci or caused

damage to him, and Petrucci's legal malpractice claim fails as a matter of law as to a

required element, that of causation.

Louisiana law governs the timeliness of Petrucci's legal malpractice claim against

Egenberg. The starting point for the legal analysis is La. R.S. § 9:5605, entitled Actions for

Legal Malpractice, which provides in relevant part:

> No action for damages against any attorney at law duly admitted to practice in
> this state, any partnership of such attorneys at law, or any professional
> corporation, company, organization, association, enterprise, or other
> commercial business or professional combination authorized by the laws of this
> state to engage in the practice of law, whether based upon tort, or breach of
> contract, or otherwise, arising out of an engagement to provide legal services

---

[2] The Egenberg defendants raised an alternative challenge to causation arguing that Petrucci did not have any valid and recoverable BP claims to begin with so by losing the legal malpractice claims against the Becnel defendants he did not suffer a loss. This argument is moot given the Court's decision on the peremption issue so the Court does not address it.

The Court has reviewed, however, the report produced by Egenberg's expert, attorney Zachary L. Wool, who has had considerable experience litigating Deepwater Horizon claims both within and outside of the MDL settlement. Wool's report is impressive. (Rec. Doc. 121-5, Exhibit B). Wool's opinions, which are explained in detail, undermine the contention that the Becnel defendants committed legal malpractice when handling Petrucci's Deepwater Horizon claims.

> shall be brought unless filed in a court of competent jurisdiction and proper venue ***within one year*** from the date of the alleged act, omission, or neglect, or ***within one year*** from the date that the alleged act, omission, or neglect is discovered or should have been discovered; ***however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.***

La. Rev. Stat. § 9:5605(A) (emphasis added).

The one-year and three-year periods of limitation provided in Subsection A above are peremptive periods and therefore may not be renounced, interrupted, or suspended. *Id.* § 5605(B). As noted by the Louisiana Supreme Court, § 9:5605 provides three peremptive periods: 1) a one-year peremptive period from the date of the act, neglect, or omission; 2) a one-year peremptive period from the date of discovering the act, neglect, or omission; and, 3) a three-year peremptive period from the date of the act, neglect, or omission when the malpractice is discovered after the date of the act, neglect, or omission. *Jenkins v. Starns*, 85 So. 3d 612, 626 (La. 2012). The three-year period triggered by the act of malpractice constitutes the outermost time limit that may apply regardless of when the plaintiff attained knowledge of the malpractice. *Reeder v. North*, 701 So. 2d 1291, 1295 (La. 1997).

Peremption does not apply, however, in cases of fraud, as defined in Civil Code Article 1953. *Id.* § 5605(E). Article 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. It may result from silence or inaction."

Although all of the time periods in La. R.S. § 9:5605 are peremptive in nature, once fraud is established and § 9:5605(E) is triggered, none of those peremptive periods continue to be applicable, *Lomont v. Bennett*, 172 So. 3d 620, 636 (La. 2015), and the governing limitations period reverts to a liberative prescription of one year, which is subject to suspension and tolling, *id.* at 637. Thus, in cases where fraud is established under § 9:5605(E), a legal malpractice claim is governed by the one-year prescriptive period set

forth in Civil Code article 3492, which may be impacted by the jurisprudential doctrine of *contra non valentem* as well as the continuous representation rule.[3] *Id.* at 637. Furthermore, even if the acts of malpractice themselves are not fraudulent, post-malpractice fraudulent concealment can constitute fraud for purposes of § 9:5605(E).[4] *Lomont*, 172 So. 3d at 628.

Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986), Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues for trial precluding summary judgment. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)); *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993)).

That said, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when

---

[3] Under the continuous representation rule, prescription of an act of legal malpractice does not begin to run while the attorney continues to represent the client and attempts to remedy the act of malpractice. *Jenkins*, 85 So. 3d at 615. The continuous representation rule is a suspension principle so it does not apply to peremptive periods like those in § 9:5605. *Reeder*, 701 So. 2d at 1298.

[4] Under our Civil Code liberative prescription is a mode of barring actions as a result of inaction for a period of time. La. Civ. Code art. 3447. The difference between prescription and peremption is that prescription prevents the enforcement of a legal action but does not terminate the natural obligation, whereas peremption extinguishes or destroys the cause of action itself. *Bernard, Cassisa, Elliot and Davis v. Estate of Laporte*, 113 So. 3d 397, 400 (La. App. 5th Cir. 2013) (citing La. Civ. Code arts. 3447, 3458; *Naghi v. Brener*, 17 So. 3d 919, 923 (La. 2009)). A peremptive period differs from a prescriptive period in that it is not subject to interruption or suspension. *Borel v. Young*, 989 So. 2d 42, 62 (La. 2007) (citing La. Civ. Code art. 6461).

viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255, 106 S. Ct. 2505).

### *Legal Analysis*

In support of the argument that Petrucci's underlying legal malpractice claims against the Becnel defendants were already time-barred as of May 3, 2018 (the date of the Egenberg engagement), Egenberg relies on both three-year peremption and one-year peremption. According to Egenberg, although the analysis under three-year peremption is simple and straightforward and does not quire a detailed factual analysis, under either time period the legal malpractice claims against the Becnel defendants were time-barred before May 3, 2018. Further, knowing that Petrucci has always taken the position that the fraud exception of § 9:5605(E) applies to his case thereby eliminating the application of peremption, Egenberg argues that the fraud exception does not apply in this case.

Pretermitting the question of fraud (which only becomes relevant if peremption would otherwise bar the claim), the Court begins with three-year peremption because it constitutes the *outermost* time limit that may apply, starting from the act of malpractice itself. The analysis of three-year peremption does not involve the often thorny determination of when the plaintiff discovered the malpractice or the even more difficult determination of when he should have discovered it. Petrucci's comprehensive SAC provides in detail the acts upon which his legal malpractice case against the Becnel defendants was based. Therefore, the Court turns to the SAC to ascertain when the Becnel defendants' acts of malpractice are

alleged to have occurred, and therefore when three-year peremption was triggered and started to run, and whether it ran to completion before Egenberg was retained in May 2018.[5]

Before recounting Petrucci's allegations against the Becnel defendants, the Court stresses that *they are only allegations*. From what the Court can discern, Petrucci's characterization of the Becnel defendants' acts as "malpractice" is based solely on what Mr. Starr told Petrucci about how he believed the Becnel defendants should have handled Petrucci's Deepwater Horizon claims. Mr. Wool's expert report explains why the unsuccessful outcome on Petrucci's Deepwater Horizon claims likely had nothing to do with how the claims were handled. Undoubtedly many hopeful claimants had their Deepwater Horizon claims denied for reasons that had nothing to do with attorney negligence. With that understanding, the Court turns to the allegations in this case to determine when the alleged malpractice occurred for purposes of peremption.

Petrucci retained the Becnel defendants in November 2011 to represent him with regard to his Oil Spill related damages. (SAC ¶¶ 10-11). The first act of malpractice that Petrucci alleges occurred in the Fall of 2012 when Christina counseled Petrucci not to opt out of the MDL settlement. (*Id.* ¶¶ 48-57). Petrucci contends that the losses that he was

---

[5] The Court did not determine when peremption was triggered in conjunction with the Becnel defendants' motion for summary judgment because even under the most generous limitations period allowable, *i.e.*, one-year liberative prescription, it was clear that Petrucci's claim against the Becnel defendants accrued no later than June 2018, which rendered his lawsuit against them untimely when filed on August 5, 2019. The analysis and outcome of the Becnel defendants' motion for summary judgment was not based on when the alleged acts of malpractice had actually occurred. In that vein, the Court notes a misstatement on page 7 of its Order and Reasons granting the Becnel defendants' motion for summary judgment, where the Court stated that "the alleged acts that damaged Petrucci occurred in 2017." (Rec. Doc. 111, Order and Reasons at 7). That statement should have read "occurred *by* 2017." As explained below, Petrucci's own allegations explicitly place the beginning of the Becnel defendants' alleged malpractice in September-November 2012.

seeking to recover should have been pursued through a separate lawsuit because they were not recoverable under the MDL settlement.

Following the allegedly erroneous advice regarding opting out, the next acts of alleged malpractice pertain to the IEL Claim/Registration Form. Those acts first occurred in December 2012 and culminated on March 6, 2013, with the deficient form being filed by Christina. (SAC ¶ 66). According to Petrucci, the form was not only deficient in substance but it was not the correct type of form—the correct form to file would have been a BEL Claim. (*Id.* ¶ 90).

On March 13, 2013 Christina did file a BEL Claim but again there were errors in the submission. (SAC ¶¶ 96-98). The correct type of claim that needed to be filed was actually an FBEL Claim and Christina filed it for Petrucci on March 14, 2013 but it too had incorrect information. (*Id.* ¶ 101-102). By March 2013, Christina had failed to provide all of the necessary FBEL documents and had failed to withdraw the previously-filed BEL and IEL claims. (*Id.* ¶ 128). Neither Christina nor anyone else from the Becnel firm informed the Claims Administrator that the previously-filed BEL and IEL Claims were not the proper claims to consider and should be withdrawn and that only the FBEL claim should be considered. (*Id.* ¶ 132). Because of this, the FBEL Claim (which is the claim Petrucci alleges should have been pursued) was closed down by the Claims Administrator on June 2, 2014, as being duplicate of the BEL claim. (*Id.* ¶ 137).

Through at least July 16, 2014, the Becnel defendants continued down "this disastrous road" of pursuing the BEL claim by requesting a reconsideration of that claim, even though it was the FBEL claim (which had been closed down) that should have been pursued. (SAC ¶¶ 143-44). When the reconsideration request was denied on September 23, 2015, and it was continuing to be clear that the administrator was not aware that the FBEL claim was not merely a duplicate and was the claim that should have been

considered, still Christina did not inform the Claims Administrator that the FBEL claim should be reopened and considered. (*Id.* ¶ 147).

On October 13, 2015, Christina filed a notice of the reconsideration denial based on grounds that had nothing to do with the fact that the wrong type of claim was being considered, *i.e.*, Christina was continuing to pursue the BEL claim and not the FBEL claim. (SAC ¶ 150). The appeal was denied on August 29, 2016. (*Id.* ¶ 157). Christina requested discretionary court review of the denial decision based on grounds that had nothing to do with the fact that the wrong type of claim was being considered. (*Id.* ¶ 159). That request was denied on January 24, 2017. (*Id.* ¶ 164).

According to Petrucci, no one from the Becnel firm ever informed him that the request for discretionary review had been denied. (*Id.* ¶ 184). But even worse, he contends that throughout 2017 he was misled by the Becnel defendants into believing that Christina was continuing to work on his case to get him his money. (*Id.* ¶ 189).

Two things are apparent on the face of the SAC: First, assuming that Petrucci had a valid claim for legal malpractice against the Becnel defendants, it was barred by three-year peremption by the time that Egenberg was hired on May 3, 2018. Second, the fraud exception to peremption was not triggered so as to save Petrucci's claims against the Becnel defendants from peremption.

Petrucci's legal malpractice claims against the Becnel defendants were extinguished by three-year peremption before May 3, 2018 (the date Egenberg was retained) because three-year peremption runs from the date of the act, neglect, or omission, not the date that Petrucci became aware of the malpractice. The first act of malpractice alleged against the Becnel defendants started with the discrete act of providing incorrect advice regarding opting out of the MDL settlement. That act occurred in the Fall of 2012, which is when three-year peremption began to run against Petrucci, and it continued to do so until the Fall of

2015. It matters not that Petrucci did not know of the error before peremption occurred—

three-year peremption runs unforgivingly without regard to notice, knowledge, or fairness.

And it is not affected by the fact that the representation is ongoing, or that the loss that may

ultimately result from the act/omission has not completely materialized. And while the

repercussions of the error pertaining to opting out might have manifested throughout the

MDL claims process, the claim for legal malpractice related to the opt out advice was

subject to a single peremptive period that started to run in the Fall of 2012. Any claim of

legal practice pertaining to the failure to opt out was perempted by the Fall of 2015 (three

years later), which was well-before Petrucci had even met Egenberg much less hired him.

      Although the first act of alleged malpractice occurred in the Fall of 2012, Petrucci's

SAC alleges ongoing and often repeated errors during the entire course of the

representation, which raises the question of whether more than one peremptive period

applied to the legal malpractice claims against the Becnel defendants. The Becnel

defendants' representation of Petrucci involved a single goal of representation, which was

to obtain recovery on Petrucci's Deepwater Horizon economic injury claims. Generally

speaking, a single course of representation does not give rise to multiple peremptive

periods even when the plaintiff alleges multiple acts of malpractice during the course of that

representation.[6] *See Reynolds v. Voelkel*, No. 16-6984, 2018 WL 3533595, at *5 (E.D. La.

July 23, 2018) (citing *Coté v. Hiller*, 162 So. 3d 608 (La. App. 2nd Cir. 2015)). But even

though this case did involve a single course of representation, the Egenberg defendants

have not argued that a single peremptive period should apply to Petrucci's legal malpractice

claims against the Becnel defendants. Rather, the Egenberg defendants have treated the

---

[6] Multiple peremptive periods may apply where the underlying factual bases of distinct claims
differ, and where they are separated chronologically. *Reynolds*, 2018 WL 3533595, at *5 (citing
*Taussig v. Leithead*, 689 So. 2d 680, 683 (La. App. 3rd Cir. 1997)); *see also Wong v. Hoffman*,
973 So. 2d 4 (La. App. 4th Cir. 2007).

opt out issue and the issue of the FBEL Claim as two distinct claims for legal malpractice subject to two different peremptive periods. The Court is persuaded that this conservative approach is the correct one.

The second act of legal malpractice alleged against the Becnel defendants pertains to Christina's decision to pursue Petrucci's Deepwater Horizon claims by using the BEL Claim Form and not the FBEL Claim Form, which Petrucci claims was incorrect. As alleged by Petrucci, errors pertaining to the claim form process began in December 2012, and continued into March 2013 when Starr informed Christina that the correct form that should have been filed for Petrucci was the FBEL Claim Form, which Christina did file on March 14, 2013. (SAC ¶ 101). Petrucci details several deficiencies in the FBEL form that Christina filed on that date, and Starr worked with Christina during March 2013 to cure those deficiencies. (SAC ¶¶ 108-126).

But the various deficiencies in the FBEL Claim Form became a moot issue because the claims administrator did not consider the FBEL claim, and the reason that he did not consider the FBEL claim, according to Petrucci, is because Christina did not withdraw the earlier BEL and IEL forms from consideration, which later led to confusion on the part the administrator about which claim was the correct one. In other words, even if Christina had filed a perfect FBEL Claim Form on March 14, 2013, it was his failure to also withdraw the earlier claim submissions that led to the FBEL claim being terminated by the administrator as a duplicate and therefore never considered.

Petrucci's allegations describe numerous points following the March 14, 2013 filing date—the date that Christina filed the FBEL without withdrawing the earlier forms—when Christina received notices from the MDL Claims Center that would have alerted him to the fact that the administrator was addressing the earlier claims and not the FBEL claim. But Christina did not respond by either withdrawing the earlier claims or informing the

administrator that the FBEL Claim was the one that should have been considered so the administrator closed the FBEL Claim as a duplicate on June 2, 2014. (SAC ¶ 137).

Christina did not use the administrative review process which comprised three procedural steps (reconsideration, appeal, petition for discretionary review) to raise the issue that the FBEL claim should have been the claim considered. Rather Christina continued down the "disastrous road," (SAC ¶ 143), of prosecuting the denied BEL claim all the while not raising the argument that the FBEL claim was not a duplicate and should have been the claim actually considered.

Petrucci has attempted to claim each of the steps in the administrative process as separate acts of malpractice occurring in 2015 and 2016. But the Court is persuaded that each step in the administrative process when Christina pursued the BEL claim instead of the terminated FBEL claim did not trigger a new peremptive period. Whether Christina was simply making a series of professional judgments that the BEL claim is what should have been pursued all along, or whether he was committing a series of negligent acts by not pursuing the FBEL claim, they all relate to either the filing of a BEL form in the first place (occurred March 13, 2013) or the failure to withdraw the BEL form once the FBEL claim was filed (occurred on March 14, 2013). If in fact Petrucci lost his Deepwater Horizon claim because of the choice to pursue the BEL claim instead of the FBEL claim, then that harm started on either March 13 or March 14, 2013, and each repetition of the decision to purse the BEL claim did not trigger a new and separate three-year peremptive period. Any claim for legal malpractice arising out of the pursuit of the BEL claim instead of the FBEL claim was perempted by March 14, 2016, before Egenberg was retained.[7]

---

[7] The Court stresses that at this juncture of the litigation legal conclusions regarding malpractice cannot carry the day and must be proven. Mr. Wool's expert report undermines the contention that the failure to pursue the FBEL claim was the wrong decision.

Therefore, Egenberg is correct insofar as three-year peremption was complete as to the legal malpractice claims against the Becnel defendants before he was hired. And again, where peremption is concerned it matters not that Petrucci was not informed regarding the status of his claim, that he was unaware that the Becnel defendants had committed legal malpractice, or that the attorney-client relationship with the Becnel defendants was ongoing during the time that peremption was running against him.

Moreover, Petrucci fares no better under the one-year peremptive period which triggers and starts to run based on discovery of the malpractice. The reason that one-year peremption is not helpful to Petrucci is because the latest that one can file a legal malpractice action under La. R.S. § 9:5605 is three years from the date that the alleged act, omission, or neglect occurred. *Paternostro v. LaRocca*, 813 So. 2d 630, 634 (La. App. 1st Cir. 2002). As between the three-year period and the one-year period based on discovery, the peremptive period is whichever comes first. *Id.* Discovery does not affect the running of the three-year clock. With the three-year clock continuing to run, the plaintiff will not necessarily have an entire year following discovery in which to file suit before three-year peremption destroys his cause of action.

In this case the one-year peremptive clock based on discovery would only have significance if Petrucci had filed his lawsuit prior to the running of the three year clock for any of acts of malpractice identified above. Since he did not, the potential application of one-year peremption is a moot point.

It is clear then that the only way that Petrucci's legal malpractice claims against the Becnel defendants could have survived until he retained Egenberg on May 3, 2018 is if the fraud exemption found in § 9:5605(E) applies to eliminate the application of peremption, and being relieved of peremption, prescription began to run against Petrucci no earlier than May 3, 2017, which is one year prior to the date that Petrucci hired Egenberg.

The Louisiana Supreme Court's *Lomont* decision made clear that post-malpractice fraudulent concealment can constitute fraud for purposes of § 9:5605(E) such that the act of malpractice itself need not be fraudulent to apply the exception. 172 So. 3d at 629. In so holding the Supreme Court recognized the absurdity in interpreting § 5605 in a manner that would allow attorneys to engage in concealment of malpractice until the three-year peremptive period expired. *Id.* at 628. A defendant should not be allowed to benefit from the effects of peremption by intentionally concealing his wrongdoing. *Id.* at 628-29. Where the attorney engages in conduct that satisfies the codal definition of fraud, he cannot avail himself of peremption.

Petrucci alleges that he was never told that his claim was dead and throughout 2017 he was led to believe by Christina that he was continuing to get the denial of the claim reversed and to get him his money. (SAC ¶ 189). Petrucci contends that Christina's having misled him throughout 2017 constituted fraud. (*Id.* ¶ 193). Christina told Petrucci in October or November 2017 that he was making a last-ditch effort to get Petrucci his money. (*Id.* ¶ 185).

The problem with Petrucci's allegations of fraud is that the fraudulent conduct in this case that would have presumably concealed any malpractice occurred *after* three-year peremption had already operated to destroy Petrucci's legal malpractice cause of action against the Becnel defendants. In other words, this case involves not just allegations of post-malpractice fraudulent conduct but *post-peremption* fraudulent conduct, which does not fall under the fraud exception of § 9:5605(E).

The only conduct in this case that could even arguably satisfy the requirements of Article 1953's definition of fraud occurred after the discretionary review was denied in January 2017, which was after the legal malpractice claims against the Becnel defendants were already perempted. Although Petrucci does not allege with any particularity what

Christina told him in 2017 to mislead him (in fact for much of 2017 it appears that Christina was not communicating with Petrucci), Petrucci does emphasize that Christina's reticence in 2017 about the denied claim was fraudulent in and of itself because Christina essentially hid the results of his malpractice.

Even assuming that Christina's failure to communicate with Petrucci in 2017 was because he did not want to confess to his client that he had committed malpractice, by that time peremption had already run against Petrucci. So regardless of Christina's subjective intentions, he was not suppressing the truth with the intention either to obtain an unjust advantage over Petrucci or to cause a loss or inconvenience to him, *i.e.*, to avoid a legal malpractice claim, because the legal malpractice claims against the Becnel defendants were already perempted. And prior to 2017, Christina's assurances throughout the representation that he was working to get Petrucci his money and working to get his case in front of a judge were not false—he was doing just that, even if negligently. Fraud cannot be based on mistake or negligence regardless of how great. *Lomont*, 172 So. 3d at 634 (citing *Sanga v. Perdomo*, 167 So. 3d 818 (La. App. 5th Cir. 2014); *Terrebonne Concrete, LLC v. CEC Enters., LLC*, 76 So. 3d 502, 509 (La. App. 1st Cir. 2011)).

In short, nothing that the Becnel defendants said or did not say, assuming arguendo that their statements or silence could be considered fraud, thwarted Petrucci's already-perempted legal malpractice claims. The fraud exception of § 9:5605(E) does not apply here to revive already perempted claims based on post-peremption conduct.[8]

---

[8] Egenberg was incorrect when he stated in his disengagement letter to Petrucci that he may possibly have some claims pertaining to events in August and September 2016 and January 2017 that were not yet time-barred. (Rec. Doc. 54-5, Exhibit E). As the Court has explained, those events did not give rise to their own separate preemptive periods.

In sum, Egenberg is correct insofar as Petrucci's legal malpractice claims against the Becnel defendants were already perempted when he was retained in May 2018. Therefore, none of the acts or omissions that Petrucci has alleged against Egenberg, even if proven to be true, caused the loss of the legal malpractice case against the Becnel defendants. The Egenberg defendants are entitled to judgment as a matter of law.[9]

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 121)** filed by defendants Bradley Egenberg and Egenberg, APLC is **GRANTED**. The claims asserted by the plaintiff against Bradley Egenberg and Egenberg, APLC are dismissed with prejudice.

January 31, 2023

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[9] Ordinarily, the burden of proof is on the party claiming prescription. *Eastin v. Entergy Corp.*, 865 So. 2d 49, 54 (La. 2004) (citing *Lima v. Schmidt,* 595 So. 2d 624, 628 (La.1992)). However, when prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. *Id.* (citing *Younger v. Marshall Ind., Inc.,* 618 So. 2d 866, 869 (La.1993); *Williams v. Sewerage & Water Bd. of New Orleans,* 611 So. 2d 1383 (La.1993)). These rules apply to peremption also. *Lomont,* 172 So. 3d at 627 (citing *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1082 (La. 2009)).

When a complaint in a legal malpractice case contains detailed allegations of fraud to suggest that the fraud exception to peremption may apply, the Louisiana Supreme Court has found it appropriate to shift the burden of proof to the defendant to prove that the client's case is perempted. *Lomont,* 172 So. 3d at 627.

In the instant motion the Egenberg defendants do not rely on technicalities in the burden of proof analysis to support their arguments in support of judgment as a matter of law. It remains, however, that the legal malpractice claims against the Becnel defendants are time-barred on the face of the complaint.